# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

Filed: May 19, 2022

```
* * * * * * * * * * * * *   *
KRISTEN COONS,              *
                            *   PUBLISHED
                            *
          Petitioner,       *   No. 20-1067V
                            *
v.                          *   Special Master Nora Beth Dorsey
                            *
SECRETARY OF HEALTH         *   Interim Attorneys' Fees and Costs;
AND HUMAN SERVICES,         *   Reasonable Basis; Good Faith.
                            *
          Respondent.       *
                            *
* * * * * * * * * * * * *   *
```

Andrew D. Downing, Van Cott & Talamante, PLLC, Phoenix, AZ, for petitioner.
Joseph Lewis, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON INTERIM ATTORNEYS' FEES AND COSTS[1]

On August 25, 2020, Kristen Coons ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program ("Vaccine Act," "the Program," or "the Act"), 42 U.S.C. § 300aa-10 et seq. (2012)[2] alleging that she developed "a severe neurological injury" following the administration of a tetanus diphtheria ("Td") vaccination on June 23, 2019. Petition at 1, 3 (ECF No. 1).

---

[1] Because this Decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  **This means the Decision will be available to anyone with access to the Internet.**  In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2012).  All citations in this Decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

On February 3, 2022, petitioner filed a motion for interim attorneys' fees and costs. Petitioner's Motion for Attorneys' Fees and Costs ("Pet. Mot."), filed Feb. 3, 2022 (ECF No. 45). Respondent opposed an interim award of attorneys' fees and costs based on the contention that the initial claim lacked a reasonable basis. Respondent's Response to Pet. Mot. ("Resp. Response"), filed Feb. 11, 2022 (ECF No. 46).

For the reasons discussed below, the undersigned **GRANTS IN PART** petitioner's motion and awards $50,757.37 in interim attorneys' fees and costs.

## I.     BACKGROUND

### A.     Procedural History

Petitioner filed her petition on August 25, 2020, and filed medical records in August, September, and October 2020. Petition; Pet. Exhibits ("Exs.") 1-12. Petitioner filed a Statement of Completion on January 4, 2021, and on March 17, 2021, the case was assigned to the undersigned. Statement of Completion, filed Jan. 4, 2021 (ECF No. 12); Notice of Reassignment dated Mar. 17, 2021 (ECF No. 14).

Respondent filed respondent's Rule 4(c) Report on May 19, 2021, arguing against compensation. Resp. Report ("Rept."), filed May 19, 2021 (ECF No. 19). Petitioner was then ordered to file an expert report. Order dated May 19, 2021 (ECF No. 20). Petitioner filed an expert medical report by Dr. David Axelrod on July 9, 2021. Pet. Ex. 13. Dr. Axelrod also submitted medical literature in support of his opinion. Pet. Exs. 15-41. Petitioner's second expert, Dr. Mitchell Miglis, filed a report on August 27, 2021. Pet. Ex. 43. Dr. Miglis also provided medical literature in support of his opinion. Pet. Exs. 45-51.

Respondent then filed an expert medical report by Dr. Thomas Leist on October 18, 2021. Resp. Ex. A. In addition to his expert report, Dr. Leist also submitted medical literature in support of his opinion. Resp. Exs. C-G. Petitioner, in response to Dr. Leist's report, filed supplemental expert reports by both Dr. Axelrod and Dr. Miglis and additional medical literature. Pet. Exs. 53-55.

On February 3, 2022, petitioner filed a motion for interim attorney's fees and costs. Pet. Mot. Respondent filed a response on February 11, 2022, opposing an interim award of attorneys' fees and costs based on a lack of reasonable basis. Resp. Response. Petitioner then filed a reply to respondent's response in support of her motion for interim attorneys' fees and costs. Pet. Reply in Support of Pet. Mot. ("Pet. Reply"), filed Feb. 16, 2022 (ECF No. 49). Petitioner also supplemented her motion on February 17, 2022. Petitioner's Supplement to Mot. for Interim Attorneys' Fees and Costs, filed Feb. 17, 2022 (ECF No. 50).

This matter is now ripe for adjudication.

### B.       Abbreviated Summary of Medical Records[3]

Petitioner was bitten by a dog on June 22, 2019.  Pet. Ex. 5 at 2.  Following the dog bite, on June 23, 2019, petitioner sought care from an urgent care clinic which instructed her to report to the emergency room if her conditioned worsened.  Id. at 5.  Petitioner's condition did worsen later that day, and she went to the emergency room.  Pet. Ex. 10 at 165.  Petitioner's test results indicated an abnormal gram stain lab which was positive for gram positive bacillus, and a high white blood cell count.  Id. at 169-71.  At the emergency room, petitioner received a rabies vaccination, a Td vaccination, and antibiotics on June 23, 2019.  Id. at 167-69.  Petitioner received a second dose of the rabies vaccine on June 26, 2019, a third dose on July 1, 2019, and a fourth dose on July 8, 2019.  Pet. Ex. 10 at 68.  Prior to this incident, petitioner had been diagnosed with an anxiety disorder and depression.  Id. at 188-89.  Petitioner also had a prior history of alcohol use and vitamin B12 deficiency.  Pet. Ex. 5 at 2; Pet. Ex. 10 at 65-66, 315, 420.

On August 9, 2019, petitioner saw Michael Jaorasdr, A.P.R.N., for left leg numbness.  Pet. Ex. 10 at 64.  Petitioner indicated that the numbness began around the time of her emergency room visit.  Id.  She reported that since she received the injections in her thigh she has been suffering from "numbness and decreased sensation in her left lower leg."  Id.  The examination was "positive for numbness or shooting pain in [the] hands, arms, legs, or feet, excessive daytime sleepiness and weakness in [the] arms or legs" as well as "feeling nervous, anxious, or on edge for the past two weeks."  Id. at 67.  Petitioner's examination was otherwise normal.  Id. at 9-10.  Petitioner was assessed as having possible nerve damage associated with the vaccinations she received in her left thigh, depression, and anxiety.  Id.

On August 23, 2019, petitioner saw Dr. Jerry Sobel for her left leg numbness.  Pet. Ex. 4 at 8.  Petitioner indicated to Dr. Sobel that her numbness began about two days following her vaccinations in her left thigh.  Id.  Petitioner also noted that her symptoms had progressively worsened.  Id.  On examination, petitioner had reduced sensation in her left leg.  Id.  Dr. Sobel concluded that the lack of sensation was associated with either a left L5 radiculopathy or a peroneal nerve neuropathy.  Id. at 9.  It was, however, Dr. Sobel's "medical opinion that [a peroneal nerve neuropathy] was more likely" because petitioner was a "habitual leg crosser."  Id.

On August 27, 2019, petitioner followed up with Dr. Sobel to review her lab results.  Pet. Ex. 4 at 2.  Her lab results indicated a decreased velocity in the left peroneal motor nerve; however, there was no evidence of electrical instability in any of the examined muscles, and all other nerves were within normal limits.  Id.  Dr. Sobel's notes indicated there was "evidence for a mild left-sided peroneal nerve neuropathy at or around the fibular head involving motor fibers to both the [extensor digitorum brevis muscle]and tibialis anterior."  Id. at 3.  Dr. Sobel assessed petitioner with left leg numbness and weakness as well as neuropathy of the left peroneal nerve.  Id. at 6.

---

[3] Although the undersigned has reviewed all of the medical records and other evidence in this case, for purposes of efficiency, this history is largely taken from respondent's Rule 4(c) Report. For a more detailed factual history, see Resp. Rept. at 1-10.

On September 3, 2019, petitioner saw Dr. Cory Nelson, an orthopedist, for left knee pain. Pet. Ex. 6 at 22. Petitioner reported to Dr. Nelson that the numbness in her left leg began two days after receiving the vaccinations. Id. Dr. Nelson noted the numbness in petitioner's left leg and ordered an MRI to rule out potential nerve compression concerns. Id. On September 6, 2019, petitioner saw Dr. Pritish Pawar, a neurologist, for paresthesia. Pet. Ex. 7 at 2. Dr. Pawar reviewed the previous lab results and assessed the petitioner with left common peroneal neuropathy at the fibular head and paresthesia. Id. at 3-4. Dr. Pawar also ordered an MRI of petitioner's brain, brain stem, and cervical spine. Id. Petitioner did not undergo either of the MRIs that were ordered. Pet. Ex. 8 at 12.

On September 13, 2019, petitioner met with another neurologist, Dr. David Saperstein, for the same leg numbness. Pet. Ex. 8 at 12. Dr. Saperstein completed an electromyogram/nerve conduction study on petitioner which he interpreted as normal and did not indicate a large fiber neuropathy. Id. Dr. Saperstein noted "[t]his came on surely after tetanus and rabies injections. Possible that there was some immune response to these." Id. at 14. Dr. Saperstein ordered a skin biopsy of the area which revealed an abnormal nerve fiber density at the distal site and a normal density at the proximal site. Id. at 39. Dr. Saperstein indicated that this was consistent with a length-dependent neuropathy affecting small nerve fibers. Id. Dr. Saperstein also noted that petitioner had a vitamin B12 deficiency which could be related to her diffuse abnormality of vibratory sensations. Id. at 14.

On November 14, 2019, petitioner had a follow up visit with Dr. Saperstein to review lab results. Pet. Ex. 8 at 16. Dr. Saperstein noted that the lab results were consistent with a diagnosis of small fiber neuropathy. Id. Dr. Saperstein stated that with the temporal connection between the vaccinations and illness onset that the leg numbness was "likely the result of an autoimmune reaction to the vaccination." Id.

On May 4, 2020, Dr. Saperstein conducted a telehealth visit with petitioner. Pet. Ex. 8 at 29. At that visit, petitioner continued to report neuropathic pain. Id. Dr. Saperstein prescribed a low dose of gabapentin. Id.

## II.    PARTIES' CONTENTIONS

### A.    Petitioner's Contentions

Petitioner argues that her complaint was brought in good faith and with a reasonable basis, pursuant to the statutory requirements for the filing of vaccine-related claims in the Vaccine Program. Pet. Mot. at 1; see § 15(e)(1). Petitioner maintains that the Td shot she received on June 23, 2019 caused her to develop a "severe neurological injury," specifically small fiber neuropathy. Pet. Mot. at 1; Pet. Reply at 1-5. Petitioner filed two expert reports in support of her contentions. Pet. Mot. at 2. Petitioner also contends that the medical evidence and expert reports are sufficient to show that she had a reasonable basis to file her claim. Pet. Reply at 1. Five hundred and twenty-eight days passed since the filling of the initial petition until the filing of petitioner's Motion. Pet. Mot. at 3. In that time, all expenses have been paid by petitioner's counsel. Id. at 1, 3. Petitioner additionally argues that both the rates of counsel and experts are commensurate with their experience and expertise. Id. at 4-6. In petitioner's

reply, she contends that respondent has improperly framed this analysis as an entitlement decision and not as an issue of reasonable basis.  Pet. Reply at 5.

### B.     Respondent's Contentions

Respondent maintains that there was never any reasonable basis for the initial petition, and therefore, attorneys' fees and costs are inappropriate.  Resp. Response at 1.  In addition, respondent argues that "severe neurological injury" is not an accepted diagnosis.  Id. at 2.  Respondent also asserts that petitioner failed to undergo requested medical testing which could have shown other causes of her injury.  Id. at 2-3.  Respondent contends that the expert reports filed by petitioner neither indicate a causal association between the Td vaccine and the injury nor do the reports indicate an appropriate timeframe for the onset of a neurological injury following vaccination.  Id. at 3.

Respondent also points out that respondent's expert opined against an association between the Td vaccination and the injury.  Resp. Response at 3.  In addition, respondent's expert holds the opinion that three days is not enough time to have suffered neurological injury from a vaccine.  Id.  Respondent's expert maintains the belief that petitioner's B12 deficiency, alcohol use, and potential glucose intolerance are all better explanations for her injury.  Id.

Respondent also indicates that petitioner's supplemental reports do not link the Td vaccination with small fiber neuropathy.  Resp. Response at 3.  Furthermore, respondent argues that the petitioner's experts failed to explain how three days would be enough time post-vaccination to develop petitioner's injury.  Id. at 3-4.

Respondent concludes that should the undersigned find in favor of awarding attorneys' fees and costs, then the Court should exercise its discretion in determining what are reasonable attorneys' fees and costs.  Resp. Response at 4-5.

## III.   DISCUSSION

The Vaccine Act mandates that special masters shall award reasonable attorneys' fees and cost related to any petition that results in an award of compensation.  § 15(e)(1).  Even if compensation is not awarded, the special master may award reasonable fees and costs if, in the determination of the special master the petition was brought in good faith and with a reasonable basis.  Id.  If the special master has not yet made a determination on entitlement, she may still award reasonable attorneys' fees and costs on an interim basis.  See Avera v. Sec'y of Health & Hum. Servs., 515 F.3d 1343, 1352 (Fed. Cir. 2008); see also Mazmanian v. Sec'y of Health & Hum. Servs., No. 18-1153V, 2020 WL 618549 (Fed. Cl. Spec. Mstr. Jan. 14, 2020).

"Good faith" is a subjective standard.  Hamrick v. Sec'y of Health & Hum. Servs., No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).  A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred.  Turner v. Sec'y of Health & Hum. Servs., No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).  The standard for finding good faith has been described as "very low," and findings that a petition lacked good faith are rare.  Heath v. Sec'y of Health & Hum. Servs., No. 08-86V, 2011 WL 4433646, at *2 (Fed. Cl. Spec. Mstr. Aug. 25, 2011).

"Reasonable basis," however, is an objective standard.  Unlike the good faith inquiry, reasonable basis requires more than just petitioner's belief in her claim.  See Turner, 2007 WL 4410030, at *6.  Instead, a reasonable basis analysis "may include an examination of a number of objective factors, such as the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation."  Amankwaa v. Sec'y of Health & Hum. Servs., 138 Fed. Cl. 282, 289 (2018); accord Cottingham ex rel. K.C. v. Sec'y of Health & Hum. Servs., 971 F.3d 1337 (Fed. Cir. 2020).  "More than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis."  Cottingham, 917 F.3d at 1346.

## IV.  ANALYSIS

### A.  Good Faith

In the instant case, the undersigned has no basis to believe, and respondent does not argue, that petitioner did not bring her claim in good faith.

Therefore, the undersigned finds that the petitioner brought her claim in good faith.

### B.  Reasonable Basis

In discussing the reasonable basis requirement in Cottingham, the Federal Circuit stressed the prima facie petition requirements of § 11(c)(1) of the Act.  971 F.3d at 1345-46.  Specifically, the petition must be accompanied by an affidavit and supporting documentation showing that the vaccinee:

> (1) received a vaccine listed on the Vaccine Injury Table;

> (2) received the vaccination in the United States, or under certain stated circumstances outside of the United States;

> (3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine;

> (4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and

> (5) has not previously collected an award or settlement of a civil action for damages for the same injury.

Id.

Consistent with the above, petitioner has filed contemporaneous and facially trustworthy medical records demonstrating: (1) that petitioner received a covered vaccine;[4] (2) that the vaccine was administered in the United States; (3) that petitioner experienced the symptoms

---

[4] The Td vaccine is a covered vaccine pursuant to the Vaccine Act.  See § 14(a).  However, the rabies vaccination is not a covered vaccine.  The petitioner alleges her neurological injury was caused by her Td vaccination.

petitioner alleges to constitute a vaccine-caused injury, including the development of small fiber neuropathy; and (4) that these symptoms persisted for at least six months. There has also been no settlement or other compensation for the alleged injuries. Petition at 1-2, 5-7.

Respondent, however, disagrees that the claim was brought with a reasonable basis. Resp. Response at 1. Respondent argues that petitioner's experts failed to explain a causal theory, a biologically reasonable temporal association, and why the petitioner's other medical conditions should not be considered more likely causes of her injury. Id. at 3-4.

Petitioner, however, is correct that this decision on interim attorneys' fees and costs is based on whether the claim was brought with a reasonable basis and not the standards described in Althen v. Secretary of Health & Human Services, 418 F.3d 1274, 1278 (Fed. Cir. 2005). An examination of the expert reports and medical records indicates that petitioner has a reasonable basis for her claim. While "serious neurological injury" may not be a diagnosis, small fiber neuropathy is a diagnosis, and petitioner had a biopsy showing she has this condition. Petitioner's initial expert report by Dr. Axelrod argues that molecular mimicry is a likely cause of petitioner's injury and cites medical literature backing this claim. Additionally, Dr. Axelrod discussed the logical sequence of events, including potential other causes and temporal relationship in both of his reports. Petitioner's expert, Dr. Miglis, agreed with Dr. Axelrod's "report in its entirety." Dr. Miglis also responded to the respondent's expert report and addressed the concerns raised by respondent's expert.

While the undersigned does not herein analyze whether petitioner's experts and their opinions constitute preponderant evidence of causation under the Althen criteria at this stage, the evidence presented is "more than a mere scintilla." Cottingham, 971 F.3d at 1346. The undersigned additionally notes that allegations of vaccinations being causally associated with small fiber neuropathy have only come before the Court on a few prior occasions, with those cases being decided both for and against petitioners. See, e.g., Swaiss v. Sec'y of Health & Hum. Servs., No. 15-286V, 2019 WL 6520791, at *27 (Fed. Cl. Spec. Mstr. Nov. 4, 2019) (finding Tetanus-diphtheria-acellular-pertussis vaccine could cause Guillain-Barre syndrome variant small fiber neuropathy via molecular mimicry); Lapierre v. Sec'y of Health & Hum. Servs., No. 17-227V, 2019 WL 6490730, at *18-20 (Fed. Cl. Spec. Mstr. Oct. 18, 2019) (finding the medical record unsupportive of small fiber neuropathy due to the lack of a skin biopsy, and finding the molecular mimicry causation theory unpersuasive).

For these reasons, the undersigned finds that this petition had a reasonable basis when it was filed and for the time frame for which fees and costs are sought.

## V.    REASONABLE ATTORNEYS' FEES AND COSTS

### A.    Reasonable Attorneys' Fees

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera v. Sec'y of Health & Hum. Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v.

Stenson, 465 U.S. 886, 888 (1984)).  Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings.  Id. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service.  See Savin v. Sec'y of Health & Hum. Servs., 85 Fed. Cl. 313, 316-18 (2008).  Counsel should not include in their fee requests hours, including those by paralegals, that are "excessive, redundant, or otherwise unnecessary."  Saxton v. Sec'y of Health & Hum. Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done."  Id. at 1522.  Furthermore, the special master may reduce a fee request sua sponte, apart from objections raised by respondent and without providing petitioner notice and opportunity to respond.  See Sabella v. Sec'y of Health & Hum. Servs., 86 Fed. Cl. 201, 209 (2009).  A special master need not engaged in a line-by-line analysis of petitioner's fee application when reducing fees.  Broekelschen v. Sec'y of Health & Hum. Servs., 102 Fed. Cl. 719, 729 (2011).

## 1.    Hourly Rates

Here, petitioner requests the following hourly rates for the attorneys and paralegals from her firm who worked on this matter:

**Andrew D. Downing – Attorney**
    2020-2021: $385.00
    2022: $415.00

**Courtney Van Cott – Attorney**
    2020-2021: $275.00
    2022: $325.00

**Robert W. Cain & Danielle P. Avery – Paralegals**
    2020-2022: $135.00

The undersigned finds that the requested rates are reasonable.  Moreover, the rates are in accordance with what Mr. Downing and Ms. Van Cott have previously been awarded for their Vaccine Program work.  See, e.g., Hoover ex rel. L.H. v. Sec'y of Health & Hum. Servs., No. 20-1394V, 2021 WL 5575768, at *8-9 (Fed. Cl. Spec. Mstr. Nov. 1, 2021); Tucker v. Sec'y of Health & Hum. Servs., No. 19-13V, 2020 WL 6777559, at *2 (Fed. Cl. Spec. Mstr. Oct. 30, 2020); Olschansky v. Sec'y of Health & Hum. Servs., No. 17-1096V, 2020 WL 1027681, at *2 (Fed. Cl. Spec. Mstr. Feb. 21, 2020).  Additionally, the requested rates are below the range of acceptable rates per the Office of Special Masters attorney's fee schedule for 2022.[5]  The undersigned will therefore award the rates requested.

---

[5] The 2022 Office of Special Masters Attorney's Forum Hourly Rate Fee Schedule can be found at http://www.uscfc.uscourts.gov/sites/default/files/Attorneys%27-Forum-Rate-Fee-Schedule-

Mr. Downing also requested an hourly rate of $135.00 per hour for work done by paralegals from 2020 to 2022. These rates are consistent with such work previously awarded in the Program. <u>See</u> <u>Hoover</u>, 2021 WL 5575768, at *9. Therefore, the undersigned will award the rates requested.

### 2.      Reduction of Billable Hours

In reducing an award of fees, the goal is to achieve rough justice, and therefore a special master may take into account their overall sense of a case and may use estimates when reducing an award. <u>See</u> <u>Florence v. Sec'y of Health & Hum. Servs.</u>, No. 15-255V, 2016 WL 6459592, at *5 (Fed. Cl. Spec. Mstr. Oct. 6, 2016) (citing <u>Fox v. Vice</u>, 563 U.S. 826, 838 (2011)). It is well established that an application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine, from the application and the case file, whether the amount requested is reasonable. <u>Bell v. Sec'y of Health & Hum. Servs.</u>, 18 Cl. Ct. 751, 760 (1989). Petitioner bears the burden of documenting the fees and costs claimed.

Upon review of the submitted billing records, the undersigned finds the majority of the time billed to be reasonable. The timesheet entries are sufficiently detailed for an assessment to be made of the entries' reasonableness. A small reduction, however, is necessary due to excessive paralegal time billed. Paralegals billed time on administrative tasks (e.g., filing documents). Paralegal time was also excessive for review of filings (e.g., 0.1 hours to receive and review status reports and scheduling orders). These issues have previously been raised with the Van Cott & Talamante firm. <u>See</u> <u>Hoover</u>, 2021 WL 5575768, at *9; <u>Sheridan v. Sec'y of Health & Hum. Servs.</u>, No. 17-669V, 2019 WL 948371, at *2-3 (Fed. Cl. Spec. Mstr. Jan. 31, 2019); <u>Moran v. Sec'y of Health & Hum. Servs.</u>, No. 16-538V, 2019 WL 1556701, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019). Therefore, a reasonable reduction of $500.00 is being made for excessive billing for paralegal time.

### B.      Reasonable Costs

### 1.      Expert Fees

Petitioner requests $16,050.00 in expert fees. Pet. Mot., Ex. A at 22-24, 36, 38-40. These fees are divided between petitioner's two experts: Dr. David Axelrod and Dr. Mitchell Miglis. Dr. Axelrod charged a total of $9,300.00 for working a total of 23.25 hours at a rate of $400.00 an hour. Dr. Miglis charged a total of $6,750.00 for working 13 hours at a rate of $500.00 an hour. However, the second invoice from Dr. Miglis lists a final expense of $3,500.00 instead of $3,250.00 for 6.5 hours at $500 an hour. Pet. Mot., Ex. A at 40. Therefore, $250.00 will be reduced from the reasonable costs.[6]

---

2022-%28Final%29.pdf

[6] If petitioner believes this was a clerical error, the issue may be resolved when a final application on attorneys' fees and costs is made.

Although an hourly rate of $500.00 is considered high in the Vaccine Program, the undersigned will allow that rate in this case based on the qualifications of Dr. Miglis.  The undersigned notes that other special masters have determined this rate appropriate for other well qualified experts.  See, e.g., Jaafar v. Sec'y of Health & Hum. Servs., No. 15-267V, 2019 WL 2265329, at *3-4 (Fed. Cl. Spec. Mstr. Apr. 26, 2019); Simon v. Sec'y of Health & Hum. Servs., No. 05-941V, 2008 WL 623833, at *8-9 (Fed. Cl. Spec. Mstr. Feb. 21, 2008).

Dr. Axelrod has filed numerous reports with this Court and his $400.00 an hour rate has been approved on many occasions.  See, e.g., Druery v. Sec'y of Health & Hum. Servs., No. 17-1213V, 2020 WL 5743105, at *5 (Fed. Cl. Spec. Mstr. Aug. 17, 2020); Leandro v. Sec'y of Health & Hum. Servs., No. 18-1097V, 2020 WL 3046114, at *2 (Fed. Cl. Spec. Mstr. May 11, 2020); Domke v. Sec'y of Health & Hum. Servs., No. 16-307V, 2018 WL 1835330, at *8 (Fed. Cl. Spec. Mstr. Mar. 12, 2018).  Therefore, the undersigned finds his rate reasonable and will award his fees in full.

### 2.    Miscellaneous Costs

Petitioner also requests $989.87 for miscellaneous costs, including the filing fee, medical records, and postage charges.  Pet. Mot., Ex. A at 22-24, 26-35, 37.  Petitioner has provided adequate documentation supporting these costs and the undersigned will award them in full.

## VI.    CONCLUSION

Based on all of the above, the undersigned finds that it is reasonable to compensate petitioner and her counsel as follows:

| | |
|---|---|
| Requested Attorneys' Fees: | $ 34,467.50 |
| Reduction of Attorneys' Fees: | - ($ 500.00) |
| Awarded Attorneys' Fees: | $ 33,967.50 |
| | |
| Requested Attorneys' Costs: | $ 17,039.87 |
| Reduction of Attorneys' Costs: | - ($ 250.00) |
| Awarded Attorneys' Costs: | $ 16,789.87 |
| | |
| **Total Attorneys' Fees and Costs:** | **$ 50,757.37** |

**Accordingly, the undersigned awards:**

**A lump sum in the amount of $50,757.37, representing reimbursement for reasonable interim attorneys' fees and costs, in the form of a check payable jointly to petitioner and petitioner's counsel of record, Mr. Andrew Downing.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this Decision.[7]

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

                                        <u>**s/ Nora Beth Dorsey**</u>
                                        Nora Beth Dorsey
                                        Special Master